Tony W. ALSTON, Appellant,

v.

UNITED STATES, Appellee.

No. 9568.

District of Columbia Court of Appeals.

Argued March 18, 1976.

Decided Jan. 20, 1978.

Gaillard T. Hunt, Washington, D. C., appointed by this court, for appellant.

Alexia Morrison, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Gerard F. Treanor, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted by a jury of carrying a pistol without a license. D.C. Code 1973, § 22–3204. He urges several grounds for reversal, most of which are related to his unsuccessful attempts to secure testimony on his behalf from his former codefendant, who would have been the sole defense witness. Although we reject the majority of appellant's claims, we reverse due to the trial court's error in excluding the transcribed and relevant testimony of that defense witness, whose direct testimony was rendered unavailable by a proper claim of privilege.

## I

Appellant was arrested and charged with a codefendant, Robert S. Burton. At a hearing on appellant's unsuccessful motion to suppress the pistol, a Metropolitan Police Department detective testified that one evening he observed appellant and Burton walking, looking down as though they were searching for something. Burton picked up a brown paper bag, whereupon appellant removed a pistol from his pocket and placed

it in the bag. Burton took the bag and the two men then went back in the direction from which they had come. Both men were placed under arrest. Appellant protested his innocence, claiming he simply had found the gun and given it to Burton, who was to take it to appellant's brother's house.

On the day on which appellant and Burton were to be jointly tried, Burton tendered a guilty plea. At the hearing on Burton's proffered plea, the trial court granted the government's request to question Burton under oath. Burton was sworn, and the prosecutor interrogated him as to where he discovered the pistol, the manner in which it was handled, what he intended to do with it, and whether appellant ever had it in his possession. Burton took sole responsibility for the incident, and claimed appellant never had possession of the gun. The prosecutor also inquired extensively into Burton's relationship with appellant, and into the circumstances under which they met on the day of the arrest. Burton's testimony was duly transcribed.[1]

The trial court accepted Burton's guilty plea, whereupon a disagreement arose between Burton's counsel and the prosecutor concerning the government's right to allocute at the time of sentencing. While both parties agreed that the government had waived its right to allocute in consideration of Burton's guilty plea, the prosecutor sought to clarify his understanding that the waiver applied only to then-existing facts. Thus, the prosecutor contended that he reserved the right to allocute "if [the government] believes crimes have been committed after the entry of the plea and prior to the time of sentencing." In response to a request for further clarification from Burton's counsel, the prosecutor stated that a warrant would be sought "in connection with any offense that occurs from this moment forward . . . including, but not limited to, perjury that he may commit from the witness stand in the trial of his former codefendant. . . ." Burton's counsel characterized these remarks as a "threat," and objected to what she viewed as a breach of the government's side of the plea bargain. The trial court, however, saw nothing improper in the government's position.

Neither appellant nor his attorney was present at Burton's guilty plea proceeding, as counsel for appellant previously had been excused to attend to another matter. When appellant's lawyer returned, he was not informed of the nature of Burton's testimony. He was told only that Burton had pleaded guilty and that the government had threatened him with allocution at his sentencing hearing if he were to testify for appellant.

Later that day, appellant's trial commenced. As a preliminary matter, Burton's counsel advised the trial court that both the defense and the government had indicated that they might seek to call Burton to the witness stand. She stated that it was Burton's intention, on her advice, to invoke his Fifth Amendment privilege if he were called as a witness, and she asked the trial court to rule that he validly would be entitled to do so. She argued that the basis for the claim of privilege was the possibility that the Corporation Counsel could use Burton's testimony against him in prosecuting related gun offenses under the D.C. Police Regulations.[2]

Appellant's counsel argued that Burton's testimony would comprise appellant's sole

1. Such testimony apparently represented a complete change in Burton's version of the incident. Appellant's trial counsel had filed a pretrial motion to sever the two cases, stating principally:

> Obviously each defendant will try to show the pistol belongs to, and was possessed by, the other defendant. Defendant Burton apparently made a statement or confession highly prejudicial to [appellant] Alston's case.

2. Although there then was no indication that the District of Columbia intended to proceed against Burton on either or both of the regulatory offenses, his counsel argued that his testimony would be tantamount to confessing violations of both D.C.Pol.Reg. Art. 51, § 1, possession of an unregistered firearm, and D.C.Pol. Reg. Art. 53, § 2, possession of ammunition for an unregistered firearm.

defense, and opposed Burton's invocation of his Fifth Amendment privilege. (Apparently he had been informed in the meantime of the conflict which arose earlier concerning the government's right to allocute at Burton's sentencing, and of the prosecutor's reference to possible perjury in connection with appellant's trial.) He suggested that the prosecutor improperly had intimidated Burton into claiming the privilege, and asked that the government extend immunity to Burton so that appellant could secure Burton's testimony on his behalf. The government was unwilling to comply with that request. The trial judge then placed Burton under oath, interrogated him, and ruled that he properly could decline to testify.

Thereafter, appellant's counsel requested that he be allowed to introduce evidence of Burton's prior testimony at the guilty plea proceeding by means of a transcript thereof, by the testimony of the prosecutor, or by his own testimony (based upon what Burton previously had said to him). The trial court denied each request.

At trial, the government's case consisted of the testimony of the arresting officer, who stated that he observed appellant take the pistol from his pocket and hand it to Burton. With Burton's exculpatory testimony unavailable, appellant chose not to testify and hence put forward no evidence on his behalf. The jury returned a verdict of guilty.

Appellant primarily attacks the inability to use Burton's testimony. He contends: (1) that the prosecutor threatened Burton into not testifying at appellant's trial, thereby violating appellant's constitutional right to offer witnesses in his defense; (2) that the trial judge impermissibly influenced Burton to claim his privilege; (3) that Burton's testimony at the guilty plea hearing constituted a complete waiver of

his Fifth Amendment privilege and therefore he had no right to remain silent thereafter at appellant's trial; and (4) that the trial judge should have granted appellant's request for a missing witness instruction. In addition, appellant urges as reversible error the trial court's interruption of defense counsel's opening statement, during which counsel had stated that if there were a conviction, the law would be "truly merciless" to appellant. The trial court then intervened to admonish the jury to disregard the degree of punishment which could be imposed if its deliberations resulted in conviction.[3]

We conclude that Burton was entitled to claim his constitutional privilege against self-incrimination, but we nevertheless reverse for the reason that the trial court denied appellant his Sixth Amendment right to offer witnesses on his behalf by refusing to permit the introduction into evidence of the sworn testimony given by Burton at his guilty plea proceeding.

## II

■ The Constitution guarantees a criminal defendant the right to offer the testimony of witnesses in his favor. U.S.Const. amend. VI; *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It is equally true, however, that a witness has a Fifth Amendment privilege against compulsory self-incrimination, and that a validly-invoked Fifth Amendment privilege prevails in a conflict between these two rights. *In re J.W.Y.*, D.C.App., 363 A.2d 674, 682–83 (1976); *see United States v. Roberts*, 503 F.2d 598 (9th Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975); *United States v. Johnson*, 488 F.2d 1206 (1st Cir. 1973).[4] If, therefore, Burton had a constitutional right to refuse to testify, and if his refusal was not improperly induced by the government or by the court,

---

**3.** Appellant raises other claims of error, including the sufficiency of the evidence, the conduct of the trial judge, and the legality of the sentence imposed, all of which we find to be without merit.

**4.** *See also Swann v. United States*, D.C.App., 326 A.2d 813 (1974); *Washington v. Texas, supra*, 388 U.S. at 23 n.21, 87 S.Ct. 1920; *United States v. Domenech*, 476 F.2d 1229, 1231 (2d Cir.), *cert. denied*, 414 U.S. 840, 94 S.Ct. 95, 38 L.Ed.2d 77 (1973); *Myers v. Frye*, 401 F.2d 18, 20–21 (7th Cir. 1968).

appellant could not validly complain of an infringement upon his rights. *See In re J.W.Y., supra,* at 683.

■ Appellant first contends that the prosecutor coerced Burton into not testifying at appellant's trial. A thorough examination of the alleged threats, however, reveals that they were merely attempts to clarify, for Burton's benefit, the prosecutor's previous waiver of his right to allocute at the time of sentencing. The prosecutor stated that he had promised not to allocute

as regards to any crimes committed to the point of the acceptance by the Court of the guilty plea; however, the Government does, of course, reserve the right to allocute if it believes crimes have been committed after the entry of the plea and prior to the time of sentencing.

Then, in response to extended questioning by Burton's counsel, the prosecutor further explained that the government reserved its right to allocute

if the Government believes and has probable cause to obtain an arrest warrant for Mr. Burton in connection with any offense that occurs from this moment forward . . . including, but not limited to, perjury that he may commit from the witness stand in the trial of his former codefendant, or in any other case.

. . .

These remarks were pointedly informational. They did no more than warn Burton of a potential consequence of his committing a future crime, including that of testifying falsely, and thus cannot be construed as being coercive or threatening. *See United States v. Gloria,* 494 F.2d 477, 484–85 (5th Cir.), *cert. denied,* 419 U.S. 995, 95 S.Ct. 306, 42 L.Ed.2d 267 (1974); *Griffin v. Weinburger,* 492 F.2d 969, 970 (5th Cir. 1974). The prosecutor did not threaten retaliation by certain prosecution if the witness testified, as did the trial court in *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), nor were his remarks aimed at the appellant, made out of court, or of a gratuitous nature, as was the case with statements held to have deprived the defendant of his constitutional rights in *United States v.*

*Smith,* 156 U.S.App.D.C. 66, 478 F.2d 976 (1973).

Moreover, as the trial court concluded, the remarks were "within the contemplation of the normal plea bargaining agreement," and as such were proper attempts to specify the government's expectations under the plea bargain. *Cf. Braxton v. United States,* D.C.App., 328 A.2d 385, 387 (1974). Furthermore, Burton's testimony indicates that his decision not to take the stand at appellant's trial was made upon the advice of his own counsel, and stemmed from a realization that new charges could be brought against him. The real possibility of extrinsic prosecution therefore was not overemphasized and was not "used as either carrot or stick to induce the silence of [a potential defense witness]." *In re J.W.Y., supra,* at 683.

■ Appellant's second contention is that the trial court, during the colloquy prior to the commencement of appellant's trial forced Burton to exercise his privilege not to testify. Leaving aside for the moment the question whether the court correctly evaluated Burton's claim of privilege, the court's conduct did not have the effect of keeping him from the witness stand. Burton's counsel already had advised him to assert his privilege, and the trial court was prepared to rule that he validly could do so when appellant's counsel insisted that Burton be called to the stand for further questioning. The trial court then duly advised Burton of his rights and inquired into whether Burton intended to assert his Fifth Amendment privilege. The judge's remarks, while somewhat brusque, were neither threatening nor coercive, as were the remarks held to be error in *Webb v. Texas, supra. Cf. Swann v. United States,* D.C. App., 326 A.2d 813 (1974). Moreover, Burton's several reflections of uncertainty perhaps were attributable more to appellant's counsel's interjections during the inquiry than to the manner in which the trial court addressed Burton.

■ In assessing Burton's claim of privilege, the trial court found that the

possibility of further prosecution under the Police Regulations permitted Burton to refuse to testify on Fifth Amendment grounds.[5] We agree. The privilege afforded by the Fifth Amendment encompasses testimony which might furnish "a link in the chain of evidence" needed for further prosecution. *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Mason v. United States*, 244 U.S. 362, 365, 37 S.Ct. 621, 61 L.Ed. 1198 (1917); *accord, Emspak v. United States*. 349 U.S. 190, 199, 75 S.Ct. 687, 99 L.Ed. 997 (1955). The danger of further prosecution must be "real and appreciable"; a "mere imaginary possibility" of danger cannot justify withholding evidence under the guise of the Fifth Amendment. *Mason v. United States, supra*, 244 U.S. at 366, 37 S.Ct. 621.[6] However, a trial court cannot require that the claimant "prove" the danger as he ordinarily must "prove" other claims in court; it must only determine, from all the circumstances, that the claimant has reasonable cause to apprehend a real danger:

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge, in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." [*Hoff-*

man *v. United States, supra*, 341 U.S. at 486–87, 71 S.Ct. at 818 (citation omitted).] [7]

■ In the instant case, the possibility of additional prosecution for possessing an unregistered firearm and ammunition for such a weapon was not imaginary. The Corporation Counsel could have initiated charges on the basis of Burton's testimony had it been given at appellant's trial, and could have used it as evidence against Burton in a subsequent trial for violations of the Police Regulations. The danger of further incrimination therefore was real, for although the Corporation Counsel does not often elect to prosecute under similar circumstances, it would not have been unreasonable or impermissible for it to have done so here.[8] *See generally United States v. Miranti*, 253 F.2d 135, 138–39 (2d Cir. 1958). The trial court thus ruled correctly that Burton could decline to testify at appellant's trial.

■ Appellant argues that Burton had waived his Fifth Amendment privilege at the plea session earlier in the day by testifying under oath to having found and possessed the loaded gun. The basic purpose of that proceeding was to determine the accuracy, voluntariness, and informed nature of his plea.[9] *See* Super.Ct.Cr.R. 11; ABA Standards, Pleas of Guilty §§ 1.4–1.6 (Approved Draft 1968). Burton at no time during that proceeding was advised of his right to remain silent; indeed under the

---

5. During the proceedings, mention also was made of the possibility that the trial court could have allowed Burton to claim his privilege on the basis of a potential perjury charge. The record on that question is unclear, however.

6. *Accord, Hoffman v. United States, supra*, 341 U.S. at 486–87, 71 S.Ct. 814; *Rogers v. United States*, 340 U.S. 367, 374–75, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

7. *Accord, United States v. Reese*, 183 U.S.App. D.C. 1, 7, 561 F.2d 894, 900 (1977).

8. Burton's plea of guilty to carrying a pistol without a license would not have made subsequent prosecution of him for possession of an unregistered firearm and possession of ammunition for an unregistered firearm violative of the double jeopardy clause of the Fifth Amend-

ment. *See United States v. Wilder*, 150 U.S. App.D.C. 172, 175–76, 463 F.2d 1263, 1266–67 (1972); *cf. Waller v. Florida*, 397 U.S. 387, 395, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). Similarly, subsequent prosecution under the Police Regulations would not have been barred by the doctrine of collateral estoppel. *See Copening v. United States*, D.C.App., 353 A.2d 305 (1976); *United States v. Wilder, supra*, 150 U.S.App.D.C. at 176, 463 F.2d at 1267.

9. During the questioning, however, the prosecutor inquired extensively into the circumstances surrounding appellant's possession of the gun. These inquiries were beyond the scope of proper guilty plea examination, apparently engaged in purely for discovery purposes, and should not have been condoned.

circumstances Burton's silence concerning any possible violation of the Police Regulations would have defeated the purpose of the questioning, for such information was vital to a determination of the validity of Burton's guilty plea to the D.C.Code offense.

To conclude that Burton waived his constitutional privilege with respect to violations of the Police Regulations, we would have to find that his waiver was knowing, voluntary, and made with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Burton was not informed at the Rule 11 hearing that he had a right to refuse to answer the government's questions, and he effected no waiver of that right by pleading guilty or by testifying concerning the plea.

■ The general rule is that voluntary testimony given in one proceeding does not constitute a general waiver of the Fifth Amendment privilege in a separate proceeding. *See United States v. Johnson, supra,* at 1209–10; *United States v. Miranti, supra,* at 139; 8 J. Wigmore, Evidence § 2276, at 470–72 (J. McNaughton rev. ed. 1961). The cases in which exceptions to that rule have been recognized have dealt with legally valid waivers of the privilege at the initial proceeding, during which most of the evidence was disclosed. *See, e. g., Ellis v. United States,* 135 U.S.App.D.C. 35, 416 F.2d 791 (1969). In such cases, there is no real danger of legal detriment arising out of the second disclosure. *See Ellis v. United States, supra,* at 45, 416 F.2d at 801. *But see United States v. Miranti, supra.* Here, however, the proceedings manifestly were separate, and no valid waiver was effected at the first proceeding. Furthermore, although the testimony given at the plea proceeding was transcribed and conceivably could signal the Corporation Counsel to charge violations of the Police Regulations, the testimony could not be used at a subsequent trial for those substantive violations, as it was given under compulsion and without the necessary warning of the Fifth

Amendment privilege. In contrast, any disclosure by Burton at appellant's trial could have been introduced into evidence against him at a subsequent trial. In addition,

> reiteration adds to the credibility of the statement, . . . and if construed as a waiver could lead to additional questions requiring answers which further implicate the witness. [*United States v. Miranti, supra,* at 140 (citation omitted).]

We therefore uphold the ruling of the trial court concerning Burton's claim of privilege.

■ Appellant urges that even if Burton properly invoked his privilege, he should not have been allowed to claim the privilege prior to commencement of the trial; he should have been sworn and then permitted to decline to answer specific questions as presented to him during the trial. That argument has some merit. A witness' privilege not to testify is more narrow in scope than that of a defendant. Generally, the privilege of a witness who is not accused exists only with regard to specific questions; it does not encompass a refusal to take the stand at all. *See McCormick, Evidence* § 136 (2d ed. E. Cleary 1972). *See also Emspak v. United States, supra; Hoffman v. United States, supra; Rogers v. United States, supra.* Furthermore, "the trial judge . . . may not permit the witness to refuse to testify where a narrower privilege will adequately protect him." *United States v. Reese,* 183 U.S.App.D.C. 1, 7, 561 F.2d 894, 900 (1977). Here, however, Burton indicated that he would refuse to testify to any of the elements of the crime at appellant's trial. Since his refusal was based on a proper claim of privilege, his appearance on the stand could not have aided appellant in his defense. Appellant thus was not prejudiced by the court's ruling.

■ After appellant's counsel sought unsuccessfully to convince the government (or the trial court sua sponte) to extend immunity to Burton, he finally asked the court to give a missing witness instruc-

tion.[10] The same argument which appellant makes here was rejected in *Morrison v. United States*, 124 U.S.App.D.C. 330, 333, 365 F.2d 521, 524 (1966), in which the court stated:

> Where a Fifth Amendment testimonial claim has been invoked by a witness and granted, the Government's refusal to grant him immunity in order to permit him to testify does not give rise to a missing witness instruction.

We both are bound by and agree with that statement of the law. *See M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971).

■ We deal now with appellant's fifth claim of error. During defense counsel's opening statement to the jury, he said:

> [S]hould you find the defendant, Alston, guilty in this case, the weight of the Government, of all of society, comes down on the defendant in a manner that is truly merciless.

At that point the trial judge interrupted counsel and advised the jury not to be misled by that statement because the law "is always tempered with mercy." The trial court then reminded the jury that its duty was to determine guilt or innocence on the basis of the evidence presented and to refrain from a consideration of the question of punishment. Appellant contends that this interruption constituted error.[11] We disagree.

■ The trial court acted well within its discretion when it intervened to admonish the jury on its function. The jury should not consider the question of possible punishment of a defendant in arriving at its verdict, and it is incumbent upon the trial judge to restrain it from doing so. *See United States v. Patrick*, 161 U.S.App.D.C. 231, 494 F.2d 1150 (1974), and cases cited therein. The trial court also instructed the jurors at the close of the case to disregard any impressions they may have formed about the court's opinion of the evidence in the case. We find that no prejudice to appellant could have accrued as a result of this incident.

■ As is evident from the foregoing discussion, were the allegations of error limited only to appellant's unsuccessful efforts to obtain testimony directly from Burton, his failure to do so would not necessitate reversal merely because Burton's exercise of his right presumably inured to the government's advantage. However, appellant contends further that he should have been allowed to present the transcript of Burton's statements at the plea proceeding to the jury. A fair and careful reading of the record reveals that appellant's counsel did request such a transcript, but the court denied the request on the grounds of untimeliness and probable irrelevance.[12] We

---

10. The trial court did not have authority to bestow immunity on Burton in order to secure his testimony for appellant. *See In re J.W.Y., supra*, at 684 & n.13; *Morrison v. United States*, 124 U.S.App.D.C. 330, 333, 365 F.2d 521, 524 (1966); *Earl v. United States*, 124 U.S.App.D.C. 77, 80, 361 F.2d 531, 534 (1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). There also is no merit to appellant's claim that the government's refusal to extend immunity to his prospective witness was incompatible with appellant's right to a fair trial. *See, e. g., In re J.W.Y., supra*, at 684; *Terrell v. United States*, D.C.App., 294 A.2d 860, 864 (1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973); *Morrison v. United States, supra*, 124 U.S.App.D.C. at 333, 365 F.2d at 524; *Earl v. United States, supra; United States v. Berrigan*, 482 F.2d 171, 190 (3d Cir. 1973); *United States v. Jenkins*, 470 F.2d 1061, 1063–64 (9th Cir. 1972), *cert. denied*, 411 U.S. 920, 93 S.Ct. 1544, 36 L.Ed.2d 313 (1973).

11. Appellant also asserts that the trial court's conduct throughout the course of the trial revealed to the jury his bias against appellant. We have studied the trial transcript to determine the possible presence of any such alleged misconduct and have discovered none.

12. In response to defense counsel's suggestion that perhaps he should obtain a transcript of Burton's testimony at the guilty plea proceeding, the trial court remarked that the start of trial was an inappropriate time to rule on "those evidentiary questions." Defense counsel continued to seek enlightenment on Burton's prior testimony, as he had not been present at that time, but the trial court concluded the inquiry by saying:

> I can't stop a trial and impose upon the Court's time nor upon counsel for the other side's time to permit or require discovery to take place, particularly, with respect to a matter that might have dubious consequence anyway. . . . .

conclude that the court thus erred.[13]

■ Burton's statements under oath at the plea proceeding should have been made available to appellant under the prior recorded testimony exception to the hearsay rule. The admissibility of such testimony is sanctioned when (1) the direct testimony of the declarant is unavailable, (2) the former testimony was given under oath or affirmation in a legal proceeding, (3) the issues in the two proceedings were substantially the same, and (4) the party against whom the testimony now is offered had the opportunity to cross-examine the declarant at the former proceeding. McCormick, Evidence §§ 254–57 (2d ed. E. Cleary 1972); *see District of Columbia v. Faison,* D.C.App., 278 A.2d 688, 689 (1971); 5 J. Wigmore, Evidence §§ 1386–88, 1398 (J. Chadbourn rev. ed. 1974).

Burton, as a witness validly claiming his privilege against self-incrimination, inescapably was "unavailable" to testify at appellant's trial. *See United States v. Brasco,* 516 F.2d 816, 818–19 (2d Cir.), *cert. denied,* 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975); *United States v. Elmore,* 423 F.2d 775, 778 (4th Cir.), *cert. denied,* 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970); *United States v. Mobley,* 421 F.2d 345, 350–51 (5th Cir. 1970). *See* Fed.R.Evid. 804(a)(1); McCormick, Evidence, *supra,* § 253 at 612.

His prior statements, however truthful or untruthful they actually may have been, were made under oath at his guilty plea proceeding. The government, after requesting that Burton be sworn, conducted a searching inquiry into the extent of appellant's participation in the offense—the precise issue to be determined at appellant's trial. Appellant's absence and consequent lack of opportunity to cross-examine Burton at the guilty plea hearing are not dispositive, as the party against whom the testimony later was being offered is the government, which was able to cross-examine Burton at the hearing.[14]

Appellant was denied his constitutional right to a fair trial when the trial court refused to allow him to present relevant, facially exonerating, and admissible prior recorded testimony to the jury—testimony which constituted his only defense. For this reason, we set aside appellant's conviction and remand the case for such further proceedings as may be appropriate.

*Reversed and remanded.*

■

The court so stated even though it knew that appellant's counsel could not have requested the transcript any earlier, and that the substance of the transcript—if believed—would exonerate appellant, which was hardly a matter of "dubious consequence."

**13.** This issue would not have arisen had Burton not been put under oath at the plea proceeding. Although Fed.R.Crim.P. 11(c)(5) permits this practice, Super.Ct.Cr.R. 11 did not sanction the use of such a procedure until its amendment was effectuated by order of this court on September 24, 1976—a date well after the events at issue took place. The pertinent portion of Super.Ct.Cr.R. 11 now reads as follows:

(c) ADVICE TO DEFENDANT. Before accepting a plea of guilty or *nolo contendere,* the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

\* \* \* \* \* \*

(5) that if he pleads guilty or *nolo contendere,* the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement. This rule permits the court to question the defendant about the offense at issue; it does not invite the prosecutor to engage in the type of examination conducted here.

**14.** The admissibility of Burton's prior testimony for use in appellant's defense is not beset with the constitutional questions which are present when the government tries to introduce similar testimony against an accused. In such cases the Sixth Amendment right of an accused to confront the witnesses against him is presented. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 38 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Our inquiry here is directed only to the question of satisfying the purposes of the hearsay rule.