Michael DUDLEY, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1629.

District of Columbia Court of Appeals.

Argued Nov. 20, 1997.
Decided July 23, 1998.

Betty J. Clark, Washington, DC, for appellant.

Stuart G. Nash, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

Appellant Dudley was found guilty by a jury of distribution of cocaine, possession with intent to distribute cocaine, and possession with intent to distribute marijuana. On appeal he challenges the refusal of the trial court to admit in evidence statements made by one of his codefendants, Antoinette Smith, at her aborted guilty plea proceeding and a similar statement Smith made to Dudley's attorney. Both statements purported to exculpate Dudley of the drug sale and purchase for which he and Smith were charged (Smith with simple possession only). We find no error in the trial court's exclusion of these statements, and affirm.

## I. The facts

According to the government's proof, on August 15, 1993, two police officers concealed in an observation post saw Dudley's codefendants Smith and Freeman drive up in a car and stop near a group of people who were socializing and drinking. Smith got out of the car, approached a fence, and talked to

Dudley. Dudley crossed the street, removed an object from the wheel well of a motorcycle trailer, returned to Smith at the fence, handed her the object, and received a different object from her. Smith returned to her car and drove off, but police stopped the car several blocks away. As they approached, they saw Smith throw what proved to be a bag of crack cocaine behind the seat, and saw Freeman attempt to conceal another bag of cocaine between the front seats. Freeman and Smith were arrested on drug charges, after which the officers returned to the group of socializers and arrested Dudley for selling drugs. They found 34 bags of crack and six bags of marijuana in the trailer wheel well.

## II. Discussion

### A. Prior cross-examined testimony.

Dudley's first contention relates to statements made by Smith at a proceeding in which she intended to plead guilty to the lesser included charge of attempted possession of cocaine. In return for reduction of the charged offense, Smith was expected to give an "insulating statement" under oath in which she described the events of the purchase and named Dudley as the seller.[1] The prosecutor asked Smith a few introductory questions and then whether, when she approached Dudley, she bought drugs from him. Smith answered "no" and explained that she sought out Dudley, whom she knew because their children played together, strictly to obtain change for a $10 bill at the request of a companion in her car. It was the companion, not Dudley, who purportedly gave her cocaine in return for her obtaining change. On hearing this testimony, the prosecutor told the court, "[W]e're not prepared to accept this insulating statement," and asked Smith no further questions. The court, recognizing that the plea had broken down, recessed the case to let Smith decide whether to plead guilty to the indictment. She later did so.

At Dudley's trial, after it was confirmed that Smith was unavailable as a witness (she had failed to appear for her sentencing), Dudley's counsel sought to introduce her statements at the aborted plea proceeding as prior cross-examined testimony. The trial judge ruled the statements inadmissible on that ground.

■ The proponent of the admissibility of prior testimony must demonstrate:

(1) that direct testimony from the declarant is unavailable; (2) that the declarant, when giving the prior testimony, was under oath in a legal proceeding; (3) that the issues in the two proceedings are substantially similar; and (4) that the party against whom the testimony is now offered had an opportunity to cross-examine the declarant at the earlier proceeding.

*Bedney v. United States,* 684 A.2d 759, 763 (D.C.1996). The first two requirements are not in issue here.

Equally important, however, is the requirement that the party against whom the testimony is now offered must have had in the prior proceeding an adequate opportunity to cross-examine the declarant. An adequate opportunity to cross-examine exists if the parties and the issues in both proceedings are substantially the same.

*Epstein v. United States,* 359 A.2d 274, 277 (D.C.1976). "Unless the issues were then [substantially] the same as they are when the former statement is offered, the cross-examination would not have been directed to the same material points of investigation, and therefore could not have been an adequate test for exposing inaccuracies and falsehoods." *Id.* at 277–78 (quoting 5 WIGMORE, EVIDENCE § 1386, at 82 (3d ed.1940)) (emphasis deleted).

■ Smith's testimony at the aborted plea proceeding did not meet this requirement. Her plea to the lesser charge depended on her giving an insulating statement satisfactory to the prosecutor. Dudley's guilt or innocence was thus at issue only in a narrow sense: if Smith satisfied the prosecutor in linking Dudley to the sale (or at least in not

---

1. The government states in its brief that it routinely insists on obtaining such a statement as part of a plea agreement in cases involving multiple defendants. The purpose of the statement is to limit the pleading defendant's ability later to change her testimony about the crime and exonerate codefendants.

exculpating him), her plea could proceed, otherwise it could not.[2] The prosecutor's questioning of Smith was therefore very limited.[3] When Smith testified contrary to the prosecutor's expectation, the plea ended and with it any issue—at that proceeding—of Dudley's guilt. The prosecutor asked no further questions because she had no reason to; Dudley's involvement in the sale had ceased to be a "material" issue in the proceeding. WIGMORE, *supra.* Indeed, with the plea agreement having dissolved, it might well have been improper for the prosecutor to continue questioning Smith about Dudley's complicity in the sale. *See Alston v. United States,* 383 A.2d 307, 312 n. 9 (D.C.1978) (at codefendant's plea of guilty to indictment, prosecutor's extensive questioning of him about defendant's role in crime was "beyond the scope of proper guilty plea examination, apparently engaged in purely for discovery purposes, and should not have been condoned").[4]

"In our cases in which the admission of prior recorded testimony has been allowed, the cross-examination has been generally broad and unrestricted." *Bedney,* 684 A.2d at 765. The purpose of Smith's plea proceeding made such cross examination pointless, if not improper; hence it did not occur.[5] In short, the issues at this proceeding and at Dudley's later trial were not substantially similar, *id.* at 763; *Epstein,* 359 A.2d at 277, and thus the exception for prior cross-examined testimony did not apply. *See also* FED. R.EVID. 804(b)(1) (former testimony admissible if, *inter alia,* party against whom testimony is offered "had an opportunity and *similar motive* to develop the testimony by direct, cross, or redirect examination") (emphasis added); *cf. Hill v. United States,* 664 A.2d 347, 351 n. 8 (D.C.1995) (before grand jury, government "may have had different motives in mind ... and not have been focused on the collateral issue of appellants' standing to challenge the search").

Our dissenting colleague is right, of course, that hearsay rules should be applied practically, not "mechanistically," especially when constitutional rights are at stake. But we deal here with statements whose trustworthiness, hence admissibility, is grounded in the *practical* opportunity for prior cross-examination defined by the incentives which the party opposing admission had to challenge their reliability. Try as she may, our colleague cannot convert the questioning that took place into recognizable cross-examination. At almost exactly the place where true cross would have begun (using, to take but one example, prior inconsistent statements) the prosecutor ceased questioning and effectively ended the proceeding. She did so because the reason for the questioning—indeed, for the proceeding itself—had expired.

We thus do not decide the "abstract" question whether questioning designed to elicit an insulating statement ever may satisfy the hearsay exception in dispute, though the answer will likely be no in light of *Alston's* admonition—not questioned by the dissent—against misuse of plea proceeding examination. We hold only that, consistent with the

---

**2.** The prosecutor's insistence on such a statement as a condition of the plea is not challenged. *Cf Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

**3.** The questions the prosecutor asked Smith about buying drugs from Dudley were as follows:

Q: Now when you approached Mr. Dudley did you buy from him?
A: No ma'am.
Q: What did you do with respect to Mr. Dudley?
... [Smith tells the story in narrative form]
Q: And is it your testimony today that you never received drugs from Mr. Dudley?
A: No I did not, ma'am.
Q: Your Honor, we're not prepared to accept this insulating statement.

**4.** The trial court in the present case explained:

[W]e're not talking about a circumstance where it would, I think, even be appropriate for the prosecutor to engage in a probing inquiry of the defendant regarding the defendant's statement.... I would believe that there would be a hue and cry from the defense bar if judges started to let the prosecutor under those circumstance[s] then engage in a probing inquiry seeking to attack the credibility of the person when the person has indicated that they are not prepared to agree to the statement the Government asked them to agree to.

**5.** We reject Dudley's suggestion at oral argument that the prosecutor's brief lead-in questioning of Smith in which Smith acknowledged that her child and Dudley's played together added significantly to the questioning about the drug transaction.

reason for Smith's testimony, the prosecutor's aborted questioning did not reflect the features of examination designed "to challenge whether the declarant was sincerely telling what [s]he believed to be the truth, whether [she] accurately perceived and remembered the matter [s]he related, and whether [her] intended meaning [was] adequately conveyed by the language [s]he employed." *Feaster v. United States,* 631 A.2d 400, 406–07 (D.C.1993) (citations and internal quotation marks omitted). Dudley's right to a fair trial did not require the jury to hear statements of such untested reliability.

**B. Declarations against penal interest.**

■■■ Dudley further argues that Smith's statements at the plea proceeding and similar statements she made to Dudley's attorney the same day amounted to declarations against her penal interest. This argument too is unavailing. "[A] statement tending to expose the declarant to criminal liability and offered as tending to exculpate the accused is admissible when the declarant is unavailable and corroborating circumstances clearly indicate the trustworthiness of the statement." *Laumer v. United States,* 409 A.2d 190, 199 (D.C.1979) (en banc) (emphasis deleted). Smith's exculpation of Dudley by itself, of course, was not against her penal interest, nor did it become so just by being conjoined with an admission of her own guilt. *See Williamson v. United States,* 512 U.S. 594, 599–600, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Although by refusing to give a satisfactory insulating statement Smith limited her options (she could now plead guilty only to possession, not attempted possession), we doubt seriously that this made her exculpatory statements sufficiently against her penal interest to meet the admissibility threshold. That question need not be answered, though, because Dudley failed to persuade the trial judge of the existence of "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement[s]." *Laumer,* 409

A.2d at 199. We may reverse the latter determination only if clearly erroneous, *id.* at 203, and we find no such error here.

*Affirmed.*

RUIZ, Associate Judge, dissenting in part.[1]

I respectfully dissent from the majority's conclusion that the trial court did not err in excluding a witness's examined and sworn testimony during a prior plea hearing even though that testimony exculpated appellant and both parties agreed that the witness was unavailable to testify for the defense at trial.[2] The majority reaches this conclusion on the basis that the "same issues" were not present at the plea hearing as at the trial, and therefore the prosecutor did not have the same motive or, indeed, even an opportunity, to cross-examine the witness at the plea hearing as she would have at trial.

In this case, Smith, the unavailable witness, had an offer to plead to attempted possession of cocaine, a notch down from the charge of possession of cocaine, but the government's acceptance of the plea was conditioned on Smith's providing an "insulating statement" that Dudley had sold her the cocaine. Although such a statement would not be admissible in the government's case in chief in its subsequent prosecution of Dudley, the "insulating statement" is valuable to the government because it in effect would have prevented Smith from changing her story and being a credible witness for the defense at Dudley's trial. If Smith were to testify to Dudley's innocence during his trial, she could be impeached with her prior inconsistent statement at the plea hearing. *See* D.C.Code § 14–102 (1995 Repl.). Smith did not provide the anticipated insulating statement inculpating Dudley, but, instead, testified under oath to Dudley's innocence. Both parties agree that Smith was not available to testify at Dudley's trial. The question before us is

1. I join the majority's opinion that because there were no corroborating circumstances the trial court's exclusion of statements purported to be against penal interest was not clearly erroneous.

2. Because I conclude that Smith's prior testimony was admissible under the prior recorded testi-

mony exception to the hearsay rule, I further conclude that the trial court also impermissibly excluded the testimony on the alternative ground that it was not credible, thereby usurping the jury's function. *See Johns v. United States,* 434 A.2d 463, 473 (D.C.1981).

whether, in light of Smith's unavailability, Smith's prior testimony at the plea hearing is admissible in order to present Dudley's defense at trial.

The answer to that question is reached by means of a case-by-case inquiry, and is not to be undertaken based on abstractions on the nature of the prior proceeding. As the Supreme Court has cautioned, "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Feaster v. United States*, 631 A.2d 400, 405–06 (D.C.1993), we adopted a fact-specific, case-by-case inquiry to determine whether a prior proceeding provided a sufficient opportunity to cross-examine to come within the prior-recorded testimony hearsay exception. After reviewing the "nature of the prosecutor's questions," the court concluded that "the questioning [before the grand jury] was directed at the ultimate issue of appellant's guilt." *Id.* at 406. Explaining that there is no requirement that there be an "adversarial, inquiring, searching, and explicative approach" in the prior proceeding, *Feaster* expressly rejected the notion that the non-adversarial character of Smith's plea proceeding precludes admission of Smith's testimony during her plea hearing at Dudley's later trial. *See id.*

Because our case-by-case approach focuses on the actual questioning at the prior proceeding to determine whether it *in fact* afforded a *sufficient opportunity* to cross-ex-

amine the witness,[3] it is therefore largely irrelevant that, as a general proposition, a prosecutor should not continue questioning a person in the course of that person's plea hearing concerning another's guilt once the person has refused to utter the insulating statement that the prosecutor requires as a condition of the plea. *See Alston v. United States*, 383 A.2d 307, 312 & n. 9 (D.C.1978). The relevant question is whether the prosecutor in this case exercised such restraint. She did not. Moreover, at no point during the prosecutor's questions did the trial court intervene to curtail examination during the plea hearing.[4] Therefore, this case is unlike *Bedney v. United States*, 684 A.2d 759, 765 (D.C.1996), where the government was precluded from questioning by the witness's Fifth Amendment privilege. Here, there was no Fifth Amendment privilege concern as Smith had already admitted to her possession of cocaine well before the prosecutor began to question her about Dudley. From that point on, the prosecutor's sole concern was to pin down Dudley's guilt in an insulating statement. The transcript shows without a doubt that the prosecutor tried to obtain that insulating statement by repeatedly asking Smith whether Dudley sold her cocaine. It was only when, after repeated questioning, that testimony was not forthcoming that the government withdrew its plea offer, notwithstanding the fact that Smith already had admitted to committing the offense to which she was pleading guilty—the ostensible purpose of the plea hearing.[5]

---

**3.** Thus, our fact-specific approach may not fit comfortably with the federal "same motive" test found in Fed.R.Evid. 804(b)(1) cited by the majority. Moreover, neither *Hill v. United States*, 664 A.2d 347 (D.C.1995), *cert. denied*, 516 U.S. 1065, 116 S.Ct. 749, 133 L.Ed.2d 697 (1996), nor *Epstein v. United States*, 359 A.2d 274 (D.C. 1976), also cited by the majority, support our adoption of a "similar motive" test to determine whether the prosecution's examination at the plea hearing sufficed to make the testimony admissible at trial for purposes of the prior recorded testimony exception to the hearsay rule. *Epstein* looked at the *content* of the prior questioning, the veracity of a police officer, to determine whether it was in fact so limited as to have been substantively different from the issue in the subsequent proceeding, the validity of a search warrant. *Id.* at 278. *Hill* concerned the

use of a prior consistent statement to rehabilitate a witness who was available to testify at trial, and there had been no questions previously asked of the witness that bore directly on the matter that became an issue at a later suppression hearing. 664 A.2d at 351.

**4.** To the contrary, when Smith first denied that Dudley had sold her drugs, she asked the court, "if it's okay, Your Honor, I can tell what happened." The trial judge replied, "Yes." Smith then proceeded to give a narrative of the incident which exculpated Dudley and inculpated a third person. See note 6 *infra*.

**5.** Indeed, Smith admitted to actual possession of cocaine, not only attempted possession, during the plea hearing.

Although the majority agrees that a fact-specific, case-by-case approach is required, it fails in that task. The majority concludes that "the purpose of Smith's plea proceeding made such cross-examination pointless, if not improper; hence it did not occur." *Ante* at 868. As noted, the "purpose" of the plea proceeding is not dispositive; we must look at what actually took place. The majority also states that "[a]t almost exactly the place where true cross would have begun (using, to take but one example, prior inconsistent statements) the prosecutor ceased questioning and effectively ended the proceeding." *Ante* at 868. There is no support in the record for that conclusion; the government did not proffer that it had any prior inconsistent statements that it could have used to impeach Smith even if she had been available to testify at trial. Even if such prior inconsistent statements had existed, a balancing of the defendant's right to due process and the

government's interest in perfecting its presentation to the jury would counsel that the appropriate resolution would be to allow the government to introduce the prior inconsistent statement in response to the defense's introduction of the plea testimony at trial, rather than outright exclusion of Smith's plea testimony. *Chambers'* admonition against mechanistic application of the hearsay rule should also apply to the government's interest in the truth-seeking function of trial.

The fact of the matter is that, contrary to the majority's assertions that the government's questioning of Smith was "very limited" and ended when Smith testified contrary to the prosecutor's expectation, see *ante* at 867, a review of the record in this case reveals that the prosecutor did *not* cease to question Smith about Dudley's guilt even after the witness did not deliver the hoped-for insulating statement.[6] After having been

---

6. The entire transcript of Smith's questioning concerning Dudley follows:

Q Ma'am, I'd like to direct your attention to the events of August 15th of 1993 and specifically to the time period of approximately 12:10 to 12:20 [a.m.] Do you recall the events of that day and that time?
A Yes ma'am.
Q Now, on that day and at that time were you driving a brown Dodge?
A Yes ma'am.
Q And did that brown Dodge have D.C. tags?
A Yes ma'am.
Q And did you enter the area of 4660 Martin Luther King Avenue in the southwest quadrant?
A Yes. Galveston Street, S.W.? Yes ma'am.
Q And were you driving the brown Dodge at that time?
A Yes ma'am.
Q Now, did you park your car near 97 Galveston Street?
A Yes ma'am.
Q Now when you parked your car, did you get out of your car and then walk toward an iron fence?
A Yes ma'am.
Q Now, when you walked toward the iron fence, did you meet up with a man who you knew as Mr. Dudley or Mr. Robinson?
A Yes, as a friend yes. I walked, yes ma'am, I walked to the fence—
Q And how did you know that man. By what name?
A Michael, 'cause his daughter plays with my son.
Q And is that Michael Dudley?
A Yes ma'am.

Q Now when you approached Mr. Dudley did you buy from him?
A No ma'am.
Q What did you do with regard to Mr. Dudley?
A Okay, if its okay, Your Honor, I can tell what happened.
THE COURT: Yes.
[ ]
A Okay. I went to Mr. Dudley to the fence, which I had Mr. Sean Friedman was in my car. He had already had the cocaine on him and he wanted to get change because the drugs that he'd bought before was not his. He needed change, so he asked me would I get out of my car and go to the fence instead of going all the way around and ask Mr. Dudley for change. At which I went to the fence and asked Mr. Dudley for change for a $10 bill which he did not have a $10 bill on him. So he walked across the street, he yelled across the street first, and asked did anybody have any change. They said yeah. He went across the street and got change and handed me two $5 bills through the fence. Once I got in the car Sean Dudley gave me the cocaine—
Q Sean Dudley or Friedman?
A Sean Friedman gave me the cocaine for taking him up the street to get the change. He gave me something for it. When I left there, that's when the police pulled me over 100 feet from where I was.
Q And is it your testimony today that you never received drugs from Mr. Dudley?
A No I did not, ma'am.
Q Your Honor, we're not prepared to accept this insulating statement.
THE COURT: Okay, well does she wish to go straight with the, as far as the indictment is

asked whether Dudley had sold her cocaine, Smith denied it. The prosecutor's examination continued, and in a narrative statement Smith described how a third person, Sean Friedman, had given her the cocaine. After Smith initially exculpated Dudley and implicated Friedman during her narration of the cocaine transaction, the prosecutor twice again asked Smith point-blank whether she had received drugs from Dudley. Therefore, there are three denials by Smith—not two as the majority states—that Dudley sold her cocaine in the transcript of the plea hearing, as well as a statement that another individual was guilty of the drug distribution offense. It was only after Smith exculpated Dudley for the fourth time that the prosecutor indicated that the government was not "prepared to accept this insulating statement" and ceased questioning Smith. The government has not proffered how the prosecutor would have further cross-examined Smith at the plea hearing had it been known at the time that her testimony would be admitted at Dudley's trial. I therefore conclude that based on the record, the prosecutor had a sufficient opportunity to cross-examine Smith, and in fact did sufficiently cross-examine her, so that Dudley should have been permitted to introduce the statements of the subsequently unavailable Smith in presenting his defense at trial.

Having considered the government's opportunity to cross-examine Smith, I turn to the importance to Dudley's defense of Smith's statements exculpating Dudley and inculpating a third party, see *Winfield v. United States*, 676 A.2d 1, 5 (D.C.1996) (en banc), and the prejudice resulting to Dudley from their exclusion at his trial. This was not a strong government case. Indeed, the government's evidence against Dudley was sketchy. Two officers observed the transaction between Smith and Dudley under less than ideal circumstances: the location was dark, the officers' observation post was more than forty yards away and ten to eleven stories above where Dudley met Smith, and the view of both officers was impeded by a tree. No one officer observed the entire transaction; the testimony of the two officers, who were in radio contact during their observations, provided a patchwork of what happened. There was no physical evidence tying Dudley to the offense. Thus, in the context of a problematic government case, Smith's exculpatory statements could well have tipped the balance in Dudley's favor.

On the other hand, there would have been no undue prejudice to the government had Smith's exculpating statements been admitted as the government would have had an opportunity to impeach the statements even if Smith was absent at Dudley's trial. Certainly, the fact that the statements were made in the course of a plea hearing during which Smith admitted to possession of cocaine would have been admissible. Similarly, Smith's statements that she was friendly with Dudley, and that their children played together, could have been introduced to show bias. And, as mentioned above, had the government had any prior inconsistent statements impeaching Smith's plea hearing, these could have been introduced at trial so that the jury could better assess Smith's testimony during the plea hearing. Therefore, the government would not have been significantly disadvantaged by the admission at trial of Smith's prior statements.

Dudley "was denied his constitutional right to a fair trial when the trial court refused to allow him to present relevant, facially exonerating, and admissible prior recorded testimony to the jury—testimony which constituted his only defense." *Alston, supra,* 383 A.2d at 315. Under the circumstances, I would reverse because there is a reasonable doubt that the verdict might have been different if Smith's exculpatory statements had been admitted. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

---

concerned, Mr. Christian, that's why, Government, you have to remind me about the insulating statement. Don't tell me after the plea is completed.

MR. CHRISTIAN: I'm sorry, Your Honor.
THE COURT: The Government has indicated that it is not satisfied with the insulating statement noting that Ms. Smith is under oath.