**UNITED STATES v. FIELD.**

No. 303, Docket 22119.

United States Court of Appeals
Second Circuit.

Argued Sept. 14, 1951.

Decided Oct. 30, 1951.

Victor Rabinowitz, of New York City (Mary M. Kaufman and Belle Seligman, both of New York City, on the brief), for appellant.

Roy M. Cohn and James B. Kilsheimer III, Asst. U. S. Attys., both of New York City (Irving H. Saypol, U. S. Atty., and Robert Martin, Asst. U. S. Atty., both of New York City, on the brief), for the United States, appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

 1. Field contends, and we agree, that any relinquishment by him of his Fifth Amendment (anti-self-incrimination) privilege in the proceedings in United States v. Field, Hammett, and Hunton, 2 Cir., 193 F.2d 92, decided today, did not constitute a relinquishment of that privilege in these separate grand jury proceedings. But, although at first he did, before the grand jury, refuse, on the basis of that privilege, to answer any questions bearing on his connection with the Bail Fund, subsequently he did tell the grand jury that, as one of the trustees of the Fund, he had actively participated in the retention of counsel by the Fund.[1] With that admission, he was no

---

1. "Q. Mr. Field, who is the attorney for the bail fund? A. Mrs. Kaufman, Mrs. Mary Kaufman.

"Q. How long has she been the attorney for the bail fund? A. She's been the attorney since the beginning of these proceedings.

"Q. You mean since the proceedings relating to the fugitive status of these four defendants? A. I think—

"Q. I'll change— A. I think it's perhaps a little earlier than that, Mr. Saypol. I'll have to look that up.

"Q. Is there a written agreement of retainer? A. No, I don't believe there is.

"Q. At whose suggestion was she retained? What were the circumstances for retaining her? A. I believe Mrs. Kaufman was brought in as a result of a discussion among the trustees.

"Q. Which trustees? A. Well, this—I was trying to think back. Certainly Mr. Green and I participated. * * *

"Q. Coming back to Mrs. Kaufman now, was there an extended conference that consumed about two hours and attended by several persons recently, in which she gave advice regarding the bail fund? A. I'm not quite clear on the question. I mean, conference when, Mr. Saypol?

"Q. Let's put it this way: Do you remember the first day that you conferred with—the first day that you discussed with anybody the question of retaining her? A. No, I don't think I do, very clearly.

"Q. Was that at about the time that the most recent crop of defendants were brought before Judge Kaufman on the question of their bail? A. Let me an-

 

longer in a position to argue that the act of producing the Fund's papers might in itself involve self-incrimination. As an admitted trustee, he, together with the other trustees, held these papers merely in a "representative capacity" and could not interpose the "personal privilege against self-incrimination, even though production of the papers might tend to incriminate * * * personally." Rogers v. United States, 340 U.S. 367, 372, 71 S.Ct. 438, 441, 95 L.Ed. 344.[2] He was obliged both (a) to produce the records and (b) to answer questions "auxiliary" to their production.[3]

2. All other questions he was asked before the grand jury were of the kind the answers to which this court today held not privileged in the companion case of United States v. Field, Hammett and Hunton, 2 Cir., 193 F.2d 92.[4]

█ 3. Field, on this appeal, seems to assert, on behalf and as trustee of the Bail Fund, that the direction to produce all its books and records was so sweeping that it constituted a violation of the Fund's privilege, under the Fourth Amendment, to be free of any unreasonable searches and seizures. We doubt whether the Fund's privilege (as distinguished from Field's personal privilege) was urged on its behalf by Field as trustee (or by anyone else) before the grand jury or the district judge; if not so urged, we cannot consider that alleged privilege on this appeal. But we pass that point. For, having in mind the nature of the inquiry, we think the direction was not so unreasonably broad as to invade the Fund's Fourth Amendment privilege.

Affirmed

---

swer as accurately as I can remember. As I recall, I believe she was brought in—we brought her in at the time that your office questioned again the validity of the bail which the trustees were endeavoring to post. I'm not perfectly certain that this is correct, but that's the best recollection that I have at the moment.

"Q. Was there ever a time that Green talked to you about retaining her or you talked to him about retaining her? A. Well, I said, before, Mr. Saypol, that I think my recollection is, well, it must have been so; that the trustees, the available trustees, discussed this question.

"Q. And thereafter was there a conference attended by other lawyers together with Mrs. Kaufman? A. In the course of this period we have consulted, yes, with a number of lawyers."

2. Field contends that he was never directed to produce the books. We cannot agree. On July 23, 1951, the grand jury so directed. On July 25, 1951, during the hearing before the district judge, Field's counsel asked the judge for "clarification" as follows: "I understand that your Honor's direction relates specifically to the matter of the production of the books and the questions relating to the bail fund. * * * Your finding is directed primarily to the books and records?" The judge replied: "And to other matters concerning the bail fund." It is immaterial that, on July 24, the district attorney had mistakenly advised the judge that the grand jury had not ordered the production of any records.

On the morning of July 30, Field said before the grand jury that he would "have to stand by my previous position and decline to produce them [the books and records] on the grounds that to do so might tend to incriminate me," and that, on those grounds, he would not "make any effort to produce the books and records."

3. See United States v. Field, Hammett, and Hunton, 2 Cir., 193 F.2d 92.

4. The writer of this opinion adheres to his dissenting views on this point expressed in his separate opinion in the companion case.