**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gondolfo MIRANTI, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Domenico BANDO, Defendant-Appellant.**

Nos. 134, 135, Dockets 24718, 24719.

United States Court of Appeals Second Circuit.

Argued Dec. 4, 5, 1957.

Decided March 3, 1958.

Daniel H. Greenberg, New York City (Matthew H. Brandenburg, New York City, on the brief for Gondolfo Miranti), for defendants-appellants.

Arthur H. Christy, Chief Asst. U. S. Atty., S.D.N.Y., New York City (Paul W. Williams, U. S. Atty., and Robert Kirtland, Fioravante G. Perrotta, and Herbert F. Roth, Asst. U. S. Attys., New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

CLARK, Chief Judge.

Defendants appeal from convictions of contempt of court, 18 U.S.C. § 401, for refusing to comply with district court orders to answer certain questions before a grand jury. They persisted in their refusal before the district court, which sentenced them each to five years in prison after summary proceedings under Fed.Rules Crim.Proc., rule 42(a). Both defendants invoked the privilege against self-incrimination to justify their silence, but the trial judge found that the answers would not be incriminatory and that the defendants actually sought to protect others by their silence.

Bando and Miranti, together with six others, had been indicted for conspiring to obstruct justice by injuring Victor Riesel, a prospective witness before a grand jury investigating racketeering, and conspiring to remove one Abe Telvi, a fugitive felon who allegedly threw acid on Riesel, from New York State to avoid prosecution for the maiming. Bando made a detailed statement to the FBI disclosing the operations of the conspirators, and Miranti made a like statement before the grand jury which indicted

them. On the basis of these statements and other evidence Bando and Miranti, together with one other conspirator, were tried separately and convicted of conspiring to remove a fugitive felon from New York State. The government announced just prior to presenting its proof at that trial that it would not try to prove conspiracy to obstruct justice. The convictions were affirmed, United States v. Bando, 2 Cir., 244 F.2d 833, certiorari denied Bando v. United States, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53. Bando and Miranti were sentenced to five years' imprisonment, and they are currently serving these sentences. Subsequently they were indicted in the New York state court for conspiracy and maiming in connection with the attack on Riesel, and both received sentences on pleas of guilty.

Prior to the federal trial of the other alleged conspirators, Bando and Miranti were removed from the federal penitentiary and brought to New York ostensibly to testify on behalf of the government. Apparently they indicated that they were unwilling to testify, for trial was adjourned on the government's motion and the grand jury which had returned the original indictments was reconvened to investigate the alleged intimidation of witnesses. Both Bando and Miranti were then brought before this grand jury and asked to acknowledge their previous statements made to the FBI and the grand jury respectively concerning the conspiracy and the actions of the various conspirators. But they refused to make such acknowledgments and invoked the privilege against self-incrimination.[1]

1. Bando before the grand jury and the court refused to answer the following questions:

"Q. Mr. Bando, I will remind you that you are still under oath. You have now been down before the Court and the Court has directed you to answer certain questions which were put to you in the grand jury which you formerly refused to answer. I am going to put those questions to you again at this time, those questions which the Court has already directed you to answer.

"'After your arrest in August of 1956, you talked to agents of the FBI and told them of your participation in the attack on Victor Riesel and named certain other persons; is that correct?'

"Q. Do you recall giving a statement to Agents of the FBI after your arrest in August of 1956?

"Q. Bando, let me read part of this statement to you, from page 3. This is the statement which you gave to the Agents of the FBI in August of 1956.

"'At about the same time Miranti and I drove uptown one night in Miranti's Buick. Miranti told me that he had an appointment to meet someone in a bar, and we went to a bar in the midtown area.'

"Q. Do you recall giving that statement, Mr. Bando?

"Q. Let me read another part of this statement you gave in August of 1956, on page 4.

"'Miranti then gave me $500 and told me to give the money to Carlino. I went up to Carlino's apartment that same afternoon or the following day and gave him the $500.'

"Do you recall giving that statement, Mr. Bando?

"Q. Let me read you another part of this statement that you gave to the FBI agents in August of '56, from page 5:

"'I next saw Miranti about a week after the attack, and he told me to tell Carlino to stay away from him until things blew over.'

"Do you recall making that statement?

"Q. Bando, I show you Grand Jury Exhibit No. 70, which is a photostatic copy of a statement made in August of 1956, consisting of five pages. Will you look at that and tell me if that is your signature at the bottom of each of those pages."

Miranti before the grand jury and the court refused to answer the following questions:

"Q. I am going to ask you this question again: Do you recall being asked this question and giving this answer:

"'Q. Mr. Miranti, did there come a time last March or April when Charlie Tuso came to see you in your store on Eldridge Street? A. Yes, sir.'

"Now did you give that answer?

"Q. I ask you if you were asked this question and if you gave this answer:

"'Q. Who was at the Forsythe Boys Club when you got there? A. Charlie.'

"Were you asked that question and did you give that answer?

"Q. Were you asked the following question:

"'Q. That is Charlie Tuso? A. Yes, sir.'

"Were you asked that question and did you give that answer?

The trial court determined that the requested answers could not be incriminatory because the defendants already had been indicted and tried for conspiring to commit the crimes; and upon their continued refusal to make any statements, it summarily convicted them of contempt. In vivid phrase directed specifically to Bando it said that this was "not a case of constitutional silence," but was "a case of underworld lockjaw."

■■■ Defendants urge a number of points on this appeal which we need not reach. For it is apparent that they properly invoked their privilege against self-incrimination, and hence the contempt convictions must be reversed. When they appeared before the grand jury neither defendant previously had been placed in jeopardy for the substantive crimes of obstructing justice by participating in injuring a prospective grand jury witness, 18 U.S.C. § 1503, or aiding a fugitive felon to escape across state lines, 18 U.S.C. § 1073, nor had the applicable statutes of limitation run on these crimes. Although the grand jury had been convened for the purpose of investigating intimidation of witnesses, it was possible for them to return such indictments against these defendants, or for another grand jury, convened in the future, to return such indictments based on the specific acknowledgments, plus other information not previously disclosed which might have been elicited had the questioning continued. Moreover, the acknowledgments, together with any such additional information, could be used as evidence against the defendants in a trial for commission of the substantive crimes. Even though the prior statements also would be admissible at such a trial, the requested acknowledgments would add to their credibility and could have led to additional admissions in this grand jury proceeding exacted through the waiver route, see Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, 19 A.L.R.2d 378, rehearing denied 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348, and United States v. St. Pierre, 2 Cir., 132 F.2d 837, 147 A.L.R. 240, dismissed St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, which also would be admissible at a possible trial for the substantive crimes.

■■ The government urges that as a practical matter the acknowledgments and possible further answers could not incriminate the defendants of these substantive crimes. It argues that once Bando and Miranti had been put in jeopardy for conspiracy to commit the crimes, they could have no reasonable fear of being prosecuted for the substantive offenses themselves. It is true that this court looks with displeasure on such "double" prosecutions if conviction is accompanied by consecutive sentences, see United States v. Chiarella, 2 Cir., 184 F.2d 903, modified 2 Cir., 187 F.2d 12,

"Q. Were you asked this next question and did you give the following answer:
" 'Q. Who else? A. Johnny.'
"Were you asked that question and did you give that answer?
"Q. Were you asked the following question and did you give the following answer:
" 'Q. That is Johnny who? A. Johnny Dio and Tommy Dio.'
"Were you asked that question and did you give that answer?
"Q. And were you asked this question and did you give this answer:
" 'Q. There were three of them there when you arrived at the club? A. Yes, sir.'
"Were you asked that question and did you give that answer?

"Q. And were you asked this question and did you give this answer:
" 'Q. And what happened when you got to the club? A. I got $500.'
"Do you remember being asked that question and giving that answer?
"Q. And do you remember being asked this question and giving this answer:
" 'Q. Who gave you the $500? A. I think it was Johnny.'
"Do you remember being asked that question and giving that answer?
"Q. And do you remember being asked this question and giving this answer:
" 'Q. That is Johnny Dio? A. Yes, sir.'
"Do you recall being asked that question and giving that answer?"

vacated Chiarella v. United States, 341 U.S. 946, 71 S.Ct. 1004, 95 L.Ed. 1370; cf. United States v. Chiarella, 2 Cir., 214 F.2d 838, certiorari denied Chiarella v. United States, 348 U.S. 902, 75 S.Ct. 226, 99 L.Ed. 708. Thus it is unlikely that a second prosecution would be commenced. But the government admits, as it must, that a second prosecution is not absolutely barred and that a conviction could support a consecutive sentence. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; United States v. Pagano, 2 Cir., 224 F.2d 682, certiorari denied Pagano v. United States, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779.

We are thus faced with the novel question whether or not a witness can invoke his privilege against self-incrimination where practically there is only a slight possibility of prosecution. The government urges that three cases support its position; but even if dicta in those cases can be construed favorably for the government, the cases are totally inapposite on their facts and do not deal with situations where lack of fear of incrimination is based on the improbability of prosecution.[2] We find no justification for limiting the historic protections of the Fifth Amendment by creating an exception to the general rule which would nullify the privilege whenever it appears that the government would not undertake to prosecute.[3] Such a rule would require the trial court, in each case, to assess the practical possibility that prosecution would result from incriminatory answers. Such assessment is impossible to make because it depends on the discretion exercised by a United States Attorney or his successor. The only solution, if one is necessary, is to broaden the Immunity Act of 1954, 18 U.S.C. § 3486, to encompass cases other than ones involving national security, in order to allow the prosecutor to bind the government not to prosecute and thereby fully protect the witness' rights in such situations.

■ ■ The government does not contend that the statements previously made by Bando to the FBI constitute a waiver of the privilege against self-incrimination to deprive him of the right to invoke the privilege in this grand jury hearing. Such contention would be frivolous because it is well established that a waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding. In re Neff, 3 Cir., 206 F.2d 149, 36 A.L.R.2d 1398; Poretto v. United States, 5 Cir., 196 F.2d 392; United States v. Field, 2 Cir., 193 F.2d 109. See 8 Wigmore on Evidence § 2276 (3d Ed. 1940). This disclosure of information to the FBI (here in the nature of a confession), while admissible as evidence in a subsequent trial of the witness, if voluntarily made, does not constitute a waiver of the witness' privilege against self-incrimination even in response to the same questions before a grand jury. It can be argued that reiteration of the prior voluntary statement is not incrim-

---

**2.** The government cites Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; Mason v. United States, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198; and In re Pillo, 11 N.J. 8, 93 A.2d 176. But the first case dealt with the constitutionality of an immunity statute and its effect on state prosecutions for crimes based on disclosures before a federal agency; the second case dealt with questions which the Court found clearly not incriminatory; and the last case dealt with crimes barred by the statute of limitations or the New Jersey double jeopardy clause and questions not shown to be incriminatory.

**3.** Our position is in accord with recent Supreme Court decisions liberally construing the protections afforded by the Fifth Amendment. See, e. g., Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225; Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931; Trock v. United States, 351 U.S. 976, 76 S.Ct. 1048, 100 L.Ed. 1493; Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997. Note, too, our ruling in United States v. Courtney, 2 Cir., 236 F.2d 921, 923, that if a defendant is "clearly entitled to assert the privilege, his motives for doing so are immaterial."

inating because that statement would be admissible against the witness at trial. But reiteration adds to the credibility of the statement, United States v. Malone, D.C.N.D.Cal., 111 F.Supp. 37, 39, and if construed as a waiver could lead to additional questions requiring answers which further implicate the witness.

■ Miranti's case is different, however, for he had made his prior statements to the same grand jury before which he now refuses to testify. Thus the government argues that Miranti's prior disclosure constituted a waiver which was still effective. A necessary corollary to the government's argument is that the instant proceeding was not separate from or independent of the prior proceeding before the same grand jury. Most prior cases involving this problem deal with testimony before a grand jury or at some type of preliminary hearing and then at trial, e.g., In re Neff, supra, 3 Cir., 206 F.2d 149; United States v. Malone, supra, D.C.N.D.Cal., 111 F.Supp. 37; Overend v. Superior Court, 131 Cal. 280, 63 P. 372; Duckworth v. District Court, 220 Iowa 1350, 264 N.W. 715, or at a prior and then a subsequent trial, e.g., United States v. Steffen, D.C.N.D. Cal., 103 F.Supp. 415, or at a prior trial and a subsequent grand jury investigation, United States v. Field, supra, 2 Cir., 193 F.2d 109; or they involve disclosure in pleadings and affidavits prior to trial and then testimony at trial or before a legislative committee, e.g., Poretto v. United States, supra, 5 Cir., 196 F.2d 392; Samuel v. People, 164 Ill. 379, 45 N.E. 728. In each of these cases the prior disclosures were held not to constitute a waiver in the subsequent proceedings for the reason that during the period between the successive proceedings conditions might have changed creating new grounds for apprehension (e.g., the passage of new criminal laws) or that the witness might be subject to different interrogation for different purposes at the subsequent proceeding. See Poretto v. United States, supra, 5 Cir., 196 F.2d 392, and United States v. Malone, supra, D.C.N.D.Cal., 111 F.Supp. 37. Under this test, two appearances before the same grand jury separated by indictment and conviction for crimes related to the original disclosures and the passage of nearly a year should not be characterized as a single proceeding and the original waiver should not still be effective. The passage of time and the events occurring between the two appearances render the proceedings separate for the purposes of the waiver rule.

We have found only two cases which deal with successive appearances before the same grand jury, and neither is particularly helpful here. In United States v. St. Pierre, 2 Cir., 132 F.2d 837, 147 A.L.R. 240, appeal dismissed St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, defendant had been held in contempt for refusing to answer a question before a grand jury. After we had affirmed his conviction in 2 Cir., 128 F.2d 979, he was recalled before the same grand jury to answer the same question. Again he refused and again he was held in contempt. In affirming this second conviction we assumed, without discussion, that the proceedings were not separate and that a waiver in the former hearing carried over to the latter. But there the considerable time lapse between the successive proceedings was unavoidable, for it was due solely to the appeal; and except for this time lapse, the case involved a continuing interrogation before the same grand jury for the same purposes. That situation does not exist here, where, for all practical purposes, two separate grand juries investigated unrelated crimes. In the second case where a conviction for contempt was reversed, Ballantyne v. United States, 5 Cir., 237 F.2d 657, the time lapse between defendant's first and last appearances before the grand jury was only six days. And in the course of these six days the defendant repeatedly appeared before the court which instructed him to answer specific questions. Moreover, the court, in reversing the conviction, specifically refused to de-

cide the case on the ground of separate proceedings and relied on the absence of waiver in the first proceeding.

We appreciate the government's frustration in this case and we honor the trial court's justifiable anger over the defendants' recalcitrance. But the Constitution is for the despicable as well as for the admirable.

Judgments reversed.