**ACLI INTERNATIONAL COMMODITY SERVICES, INC., and A.C. Israel Enterprises, Inc., Plaintiffs,**

v.

**BANQUE POPULAIRE SUISSE, Advicorp Advisory and Financial Corporation, S.A., and Naji Robert Nahas, Defendants.**

**No. 82 Civ. 1058 (MEL).**

United States District Court, S.D. New York.

April 15, 1986.

---

See also, 609 F.Supp. 434.

Rogers & Wells, New York City for plaintiffs; William R. Glendon, of counsel.

Breed, Abbott & Morgan, New York City, for defendant Naji Robert Nahas; Thomas W. Kelly, James D. Zirin, Richard J. Schechter, of counsel.

LASKER, District Judge.

This litigation, one of many pending before the court which arise from the events in the silver market in 1979–1980, is distinctive for its complex pretrial history and numerous procedural complications which were beyond the parties' control. In the instant motions plaintiffs seek to compel Naji Robert Nahas (1) to provide testimony; (2) to produce documents; and (3) to sign a waiver of Swiss secrecy laws. Nahas asserts that his testimony, the production by him of the documents sought and his executing a waiver would tend to incriminate him. The motions to provide testimony and to compel the production of documents are granted in part and denied in part. Decision on the motion to compel Nahas to waive the Swiss secrecy laws is deferred.[1]

ACLI International Commodity Services, Inc. is a Delaware corporation "registered with the United States Commodity Futures Trading Commission ["CFTC" or "the Commission"] as a 'futures commission mer-

---

1. ACLI has moved in a separate motion to compel Banque Populaire Suisse to produce documents, notwithstanding that such an act might violate Swiss secrecy laws. BPS has moved to stay decision on the motion. Excluding the Fifth Amendment issue, the motion to compel Nahas to execute a waiver of Swiss secrecy laws concerns mostly the same considerations as ACLI's motion to compel against BPS, and it also raises the same delicate issues of comity. Accordingly, the motion to compel Nahas to execute a waiver is deferred pending the resolution of BPS' motion for a stay.

chant', i.e., a commodities broker, and, as such, act[ed] on behalf of its customers as a broker, to execute orders for their accounts on various United States commodity exchanges."[2] Amended Complaint at ¶ 3 (filed Nov. 12, 1982). Naji Robert Nahas, a Lebanese born citizen of Brazil who currently resides in Sao Paulo, Brazil, was a trader in silver and silver futures during the volatile period in the silver market in 1979–1980.

The gravamen in this action for fraud against Nahas (and others) is that

> the defendants engaged in a scheme to cheat and defraud the plaintiffs by: (i) falsely representing to [ACLI] that several accounts introduced to it by defendants were individual accounts when in fact such accounts were jointly owned and/or controlled by defendants; and (ii) fraudulently directed orders to those accounts for the purpose of evading applicable position limits established by [ACLI]. [ACLI] in accepting such orders relied on these false representations. As a result of the foregoing, and after a precipitous drop in the price of silver, these jointly owned and/or controlled accounts defaulted on amounts due which totalled in excess of $28,000,000 [which ACLI] was required to pay the Comex clearing association....

*Id.* at ¶ 14. In addition, ACLI maintains that Nahas fraudulently induced ACLI to agree to an $8 million settlement by falsely representing that he did not have sufficient funds to make any larger payment. ACLI seeks to recover in this action the $20 million difference between the amount ACLI paid the clearing association and what was recovered through the settlement.

On November 16, 1983, following a period of unsuccessful attempts, plaintiffs personally served Nahas with process in Sao Paulo, Brazil pursuant to an order of the Supreme Court of Brazil. Nahas answered the complaint on January 7, 1985 and then served an "Amended Answer and Counterclaims" on January 28, 1985. Shortly

thereafter, in an unrelated, but significant action, the CFTC filed an administrative complaint accusing Nahas and various other individuals and foreign companies of attempting to manipulate and manipulating the silver market in 1979–1980. The complaint alleges, among other things, that Nahas and others owned and controlled a number of accounts which were utilized to evade speculative position limits in furtherance of their scheme to manipulate the silver market. *See In the Matter of Nelson Bunker Hunt, et al.,* "COMPLAINT AND NOTICE OF HEARING" at ¶¶ 10, 72, 90(b), CFTC No. 85–12 (Feb. 28, 1985).

After Nahas answered the complaint in the instant proceeding ACLI attempted between January and June of 1985 to procure discovery from Nahas by serving a request for the production of documents and traveling to Bermuda to take Nahas' deposition. Neither action proved fruitful. Primarily relying on the Fifth Amendment, Nahas refused to produce documents or to testify. At the deposition, but before ACLI commenced questioning Nahas, Nahas' attorney stated on the record Nahas' reasons for asserting the privilege:

> [T]he Commodity Futures Trading Commission filed an administrative complaint against Mr. Nahas and others, claiming violations of the Commodities Exchange Act in manipulating and attempting to manipulate the price of Silver Futures Contracts on the United States Commodities Exchanges.... In addition, the allegations of the CFTC complaint may constitute violations of other provisions of Federal Law including sections 1 and 2 of the Sherman Act, as well as the Clayton Anti Trust Act.... [C]onceivably state law enforcement authorities might rely upon these matters as a basis for a criminal prosecution..... [A]ny testimony that Mr. Nahas gives today at this deposition could in turn be read to a Federal Grand Jury, or otherwise be used against him in a criminal case.... [I]t is my under-

---

2. Plaintiffs Donaldson, Lufkin & Jenrette Futures formerly ACLI International Commodity Services, Inc., and A.C. Israel Enterprises, Inc., will be referred to collectively as "ACLI".

standing that you have in the course of conducting discovery in this litigation, sought to focus on the very matters that are alleged in the CFTC complaint and which we believe to be the possible subject of criminal inquiry.

Deposition of Naji Robert Nahas, Transcript at 4–6 (Jun. 6, 1985).

## I. FIFTH AMENDMENT

### A. Testimony

ACLI argues that Nahas is in no actual danger of criminal prosecution. In support of this assertion, ACLI points to the fact that over five years have passed since the events in question and no federal, state or local government has initiated, threatened to initiate or stated or intimated that it was considering initiating a criminal prosecution against Nahas or any other person on the basis of the silver transactions at issue here. Nahas rejects ACLI's conclusion, asserting that ACLI has not and can not demonstrate that no such danger exists. Nevertheless, despite his claim that his future prosecution is a realistic possibility, Nahas, who apart from prosecuting authorities is in the best position to know whether there have been criminal charges or the threat of such charges lodged against him in the past, does not dispute plaintiffs' statement that his prosecution is not imminent.

█ It does appear from Nahas' apparent inability to provide any evidence that suggests he is a target of criminal investigation, as well as from the lapse of a significant period of time since the occurrence of the widely publicized events in the silver market, that Nahas' criminal prosecution is unlikely. However, assertion of the privilege does not depend upon the trial court's assessment of the likelihood of prosecution. *United States v. Miranti,* 253 F.2d 135, 139 (2d Cir.1957).

█ Valid invocation of the privilege occurs when the witness' testimony would "furnish a link in the chain of evidence needed to prosecute...." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct.

814, 818, 95 L.Ed. 1118 (1951). Nevertheless, the danger of self-incrimination must be real and not merely imaginary or hypothetical. *See United States v. Edgerton,* 734 F.2d 913 (2d Cir.1984). Although earlier cases suggest that the privilege may not be asserted where there is *no* possibility that the witness will be prosecuted, *see United States v. Seewald,* 450 F.2d 1159, 1163 (2d Cir.1971), in *Edgerton, supra,* the Court of Appeals for this Circuit recently rejected an approach focusing on the government's intention to prosecute in favor of one which looks solely to whether the testimony in question would provide evidence of a particular crime. *United States v. Edgerton,* 734 F.2d at 921.

In *Edgerton,* the Court first determined that appellant had met the threshold showing of potential incrimination because his testimony would add to proof of wilfulness if the government pursued charges for wilfull failure to file income tax returns. The issue next considered was "whether appellant must go beyond this threshold level and show an intention on the part of the government to commence a criminal prosecution." *Id.* The Court concluded that the only reasonable answer to the question was no. Quoting with approval a recent Tenth Circuit decision the Court of Appeals stated:

> Once the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted. *United States v. Jones,* [703 F.2d 473, 478 (10th Cir.1983)]; *accord, United States v. Miranti,* 253 F.2d 135, 138–39 (2d Cir.1958).

*Id.*

█ In view of the admonition against prospective assessment of the possibility of prosecution, ACLI's argument that Nahas cannot be prosecuted because all relevant statutes of limitations have run does not meet the dispositive issue. In any event, the argument is not persuasive. The assertion that the five-year limitations period which governs the commencement of criminal actions under the antitrust statutes, the

Commodity Exchange Act and most New York felony provisions already will have run by the time Nahas is deposed does not take into consideration the fact that under New York law a person's continual presence out of the country, as Nahas claims he has been, tolls the running of the statute. *See* N.Y.Crim.Proc. Law § 30.10(4)(a)(i) (McKinney 1981). Moreover, it is evident from the allegations against Nahas contained in the CFTC administrative complaint that Nahas could be charged with participation in a very broadly defined conspiracy involving numerous alleged coconspirators. ACLI has not provided evidence to prove that the statute of limitations for conspiracy, which does not begin to run until the time of the last overt act in furtherance of the conspiracy (including steps taken to conceal its existence) has expired. *See Fiswick v. United States,* 329 U.S. 211, 216, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946). In sum, it cannot be concluded with certainty that all relevant statute of limitations have run. *See generally,* Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 Yale L.J. 1062, 1078–80 (1982) (exploring the numerous reasons why it is nearly impossible to defeat the privilege on the ground that prosecution is barred by statutes of limitations).

One further assertion must be addressed before discussing the application of the standard to the answers called for by ACLI's deposition questioning. In a letter to the court requesting reconsideration of an order directing Nahas to appear in this country for a deposition, Nahas' attorney wrote:

> Should Nahas appear in this country to testify pursuant to your Honor's Order, the CFTC can readily serve him with process.... Should Nahas invoke the privilege, the CFTC unlike ACLI might attempt to immunize him under Title 18 U.S.C. § 6001 et seq. If Nahas testifies, under a grant to [sic] immunity, his testimony may be used against him civilly by the CFTC and eventually by the plaintiffs.

*See* Plaintiffs' Memorandum in Support of Motion to Compel Deposition Testimony, Exhibit A (Jul. 3, 1985) (letter of James Zirin, Esq. dated March 12, 1985).

Relying on the letter for support, ACLI argues that if Nahas truly feared prosecution he would willingly seek immunization rather than trying to avoid it as the letter suggests; that Nahas' reliance on the Fifth Amendment is sham; and that it is civil liability which Nahas really is anxious to avoid.

■ A witness may be compelled to testify if it clearly appears that his claim of privilege is advanced as a subterfuge. *See Camelot Group, Ltd. v. W.A. Krueger Co.,* 486 F.Supp. 1221, 1225 (S.D.N.Y.1980).

Nahas' brief does not address this charge. During oral argument on the motion however, Nahas' counsel represented to the court in response to ACLI's accusation that indeed there had been negotiations with the CFTC to explore the possibility of Nahas obtaining a grant of immunity but the discussions had broken down. This statement, which we accept as accurately reflecting the facts since it was made by an officer of the court, tends to negate ACLI's claim of subterfuge. It is true that counsel's letter (assuming it reflects Nahas' position at the time) provides some support for ACLI's assessment of Nahas' motivation in relying on the Fifth Amendment. Nevertheless, in light of counsel's later statement the letter is not sufficient to prove that Nahas is not invoking the privilege in good faith. Further, "to the extent any doubt exists regarding the validity of the claimed Fifth Amendment privilege, the benefit of that doubt must go to the witness asserting the privilege." *In re Corrugated Container Antitrust Litigation,* 661 F.2d 1145, 1151 (7th Cir.1981), *aff'd,* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983).

Turning, then, to whether Nahas properly may rely on the privilege in this action, it is ACLI's contention that Nahas has not provided the court with information that is sufficient to determine whether the assertion of the privilege is legitimate and therefore that Nahas has not met his burden of

demonstrating the danger of self-incrimination. We do not agree.

A district court should not accept a witness' blanket assertion of the Fifth Amendment privilege in response to any and all questions asked of her. Rather, once a witness has claimed the privilege, the district court must determine whether that claim is valid in relation to the subject area about which inquiry is sought. *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818.... "The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Id.* at 486–87, 71 S.Ct. at 818.

*United States v. Rodriquez*, 706 F.2d 31, 37 (2d Cir.1983).

The subject matter of this case, namely "the much publicized events in the silver market in 1979 and 1980 which included the meteoric rise in the price of silver and the subsequent collapse of the market in March 1980," *Strax v. Commodity Exchange, Inc.*, 524 F.Supp. 936, 937 (S.D.N.Y.1981), is one with which this court is intimately familiar. There currently are approximately 15 cases pending before the court which derive from the silver crisis. With few exceptions the conduct alleged in the various civil complaints has a criminal analogue. In this case, ACLI alleges in its first cause of action that Nahas and others defrauded ACLI by trading in silver and silver futures through nominee accounts. This theory of fraud is not only a mirror image of the CFTC's allegations concerning Nahas' modus operandi for manipulating the silver market, but under the CEA such activity, if proved, is a "felony punishable by a fine ... imprisonment ... or both." CEA § 9(b), 7 U.S.C. § 13(b).

■ ACLI's questions pertaining to this first claim are understandably designed to provide evidence relating to the ownership and control of the so-called nominee ac-

counts. It is clear however, that Nahas' answers to such questions also could "furnish a link in the chain of evidence needed to prosecute...." *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818. Accordingly, we conclude that Nahas' assertion of the Fifth Amendment was valid and that he properly had the right to refuse to answer the questions put to him concerning ACLI's first claim.

ACLI's queries relating to the claim concerning Nahas' fraudulently inducing ACLI to enter into the $8 million settlement agreement do not stand in the same position. The disputed settlement transaction was precipitated by events during the flurry of silver trading in 1979–1980 but ACLI's proving its second claim does not depend upon evidence of Nahas' ownership or control of various accounts, nor on his trading activities. Rather, ACLI's success or failure on this cause of action turns on proof that (1) Nahas was financially able to pay more than $8 million at the time of the settlement; (2) Nahas or his agent(s) who was acting with actual or apparent authority falsely represented facts to the contrary; and (3) ACLI reasonably relied upon such statements to its detriment.[3]

The only argument that Nahas makes regarding the possibly incriminating nature of this proof is that inquiry into his finances could provide evidence of his relationship to various individuals and entities. He adds that he should not be required to testify about his wealth since he is willing to stipulate to the fact that he had more than $8 million in assets at the time of the settlement.

■ Nahas' fear that exploration of his financial affairs may prove incriminating is not unreasonable. Accepting the proposition, however, does not entitle Nahas automatically to claim the privilege with regard to all questions asked in connection with the settlement issues. First, the source of Nahas' wealth is not relevant to ACLI's

---

**3.** The elements of fraudulent misrepresentation under New York law are: "representation of a material existing fact; falsity; scienter (knowledge of falsity or recklessness); deception; and

injury." *Camelot Group, Ltd. v. W.A. Krueger Co.*, 486 F.Supp. 1221, 1228 n. 21 (S.D.N.Y. 1980).

second claim. Moreover, while ACLI is entitled to prove the extent of Nahas' wealth, there would appear to be methods of providing this information which would shield the potentially incriminating information without being unduly burdensome. For example, it may be possible for Nahas to stipulate to the pertinent facts providing only generic categories for identification purposes without revealing specific sources of income. Exploration of the most practical manner of proceeding will be left to the parties' agreement but the court stands ready to provide assistance if the parties require.

### B. Documents

The documents sought in Plaintiffs' First Request for Production of Documents to Defendant Naji Robert Nahas fall into roughly four categories: (1) documents concerning trading in silver or silver futures by Nahas or several other named individuals; (2) documents concerning the same subject as in (1) above except that they concern trading by several named corporations; (3) documents pertaining to Advicorp's formation, purpose and activities; and (4) documents pertaining to the settlement with ACLI. Nahas relies upon the "Act of Production Doctrine" to support his refusal to supply any of the documents which ACLI has requested.

In *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976), the Supreme Court recognized that in some instances the "act of producing evidence in response to a subpoena ... has communicative aspects of its own [within the meaning of the Fifth Amendment's proscription of self-incrimination], wholly aside from the contents of the papers produced." Whether production may be shielded by the privilege depends upon whether an analysis establishes that the elements of compulsion are present, and that "the tacit averments of the [person asserting the privilege] are both 'testimonial' and 'incriminating'." *Id.*

The Court of Appeals for this Circuit recently reviewed and clarified the rules of decision governing the extent to which the Fifth Amendment protection is applicable to corporate documents.

Normally a corporate representative or agent cannot claim a fifth amendment privilege against producing corporate documents, regardless of whether they contain information incriminating him or were written by him, and regardless of whether the corporation is large or small. *Bellis v. United States*, 417 U.S. 85, 88–89, 100, 94 S.Ct. 2179, 2182–84, 2189, 40 L.Ed.2d 678 (1974); *In re Grand Jury Subpoenas Duces Tecum*, 722 F.2d 981–86 (2d Cir.1983).

. . . .

In certain limited circumstances, however, an individual may have a fifth amendment privilege against being personally compelled to produce corporate documents. *In re Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 56–57 (2d Cir.1985). One situation that the Court of Appeals has held falls within this narrow exception is when an order to produce corporate papers is directed to an individual rather than to a corporate entity, *In re Katz*, 623 F.2d 122, 125–26 (2d Cir.1980); *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d at 59.

Here, ACLI's suit is against Nahas as an individual, not as a corporate representative. The request for corporate documents and the order compelling production which ACLI seeks from the court, are directed to, and have been served upon Nahas, instead of a corporate entity. Accordingly, the circumstances of the litigation bring the documents within the *In re Katz* exception and Nahas is therefore not barred from asserting the privilege as to the corporate records at issue. Nonetheless, whether Nahas' claim of privilege is valid still requires application of the *Fisher* standard.

Although most Supreme Court and Second Circuit Court of Appeals decisions exploring the application of the Fifth Amendment to compelled documents production involve subpoenas issued in criminal mat-

ters, the privilege against self-incrimination may be invoked in civil cases as well. *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). The element of compulsion inherent in a court order compelling discovery is apparent. *See United States v. Brown,* 624 F.Supp. 245, 248 (N.D.N.Y.1985). Applying the remainder of the *Fisher* test does not yield the same conclusions as to each of the various categories of documents so they must be examined separately.

Turning first to the trading records of corporations and individuals *other than Nahas,* the testimonial aspects of producing the documents are the same as in *Fisher:* such production would "tacitly concede the existence of the papers demanded and *their possession or control by [Nahas]." Fisher v. United States,* 425 U.S. at 410, 96 S.Ct. at 1580 (emphasis supplied). Whether the testimony is also incriminating is a more difficult question.

■ The relevant issue in this action is ownership and control of the various accounts and not of the documents. Nevertheless, proof that Nahas possesses and controls the records concerning the trading activities of the various accounts is evidence from which it can be inferred that Nahas was in fact the beneficial owner of the accounts. With minor exceptions the corporations and individuals about whom ACLI seeks documents are also listed in the CFTC's complaint alleging manipulation through the ownership and control of the several accounts. Moreover, the same individual and entities presumably would appear in allegations forming the basis for any criminal action that might be instituted. The averments implicit in the act of production of these documents would be proof of a central link in the chain of evidence needed to establish Nahas' criminal conduct. Accordingly, the act of production in this instance would be incriminating, as well as testimonial. Further, inas-

much as Nahas' relationship and his trading activities with Advicorp are also a central theme in the CFTC's investigation, the same result follows: Nahas cannot be compelled to produce the Advicorp documents. It should be noted however, that this ruling only recognizes *Nahas'* right not to provide the documents and does not preclude ACLI's obtaining the records in this category from Advicorp, another defendant in this litigation.[4]

Further, as to these documents the possibility of incrimination is not lessened because, as ACLI asserts, the fact that Nahas possesses the documents is "a foregone conclusion." First, ACLI provides no factual basis for this conclusion. Indeed, Nahas' objection to ACLI's document request "to the extent that it calls for the production of corporate documents on the ground that the corporate documents covered by the Request are not in his possession, custody or control" casts doubt on the accuracy of ACLI's statement. Second, even assuming ACLI has a sound basis for its assertion that Nahas' possession of the documents is a "foregone conclusion," ACLI's knowledge is not the appropriate focus for Fifth Amendment purposes. Rather, the inquiry is what evidence Nahas' production would add to the information known to the government authorities who could institute a criminal action. Since we are aware of no criminal actions currently pending against Nahas for market manipulation, the reference to government officials is hypothetical. In sum, no one is available to appear before the court with appropriate assurances that Nahas' act of production would provide only cumulative evidence.

■ Contrary to the conclusion reached above, the privilege does not apply to records of trading activities concerning accounts in Nahas' own name. As to such documents, we agree that their existence is a "foregone conclusion." Moreover, the

---

4. Advicorp apparently has been dissolved but that does not relieve them of the obligation to respond to discovery requests. The court stands ready to assist in obtaining the documents

should such intervention become necessary. *See In re Grand Jury Subpoenas issued to Thirteen Corporations,* 775 F.2d 43, 48 (2d Cir.1985).

act of producing these documents is not incriminating because it does not connect Nahas to other accounts. It is true that the documents may contain incriminating evidence. This fact alone however does not violate the Fifth Amendment. Rather "the privilege protects a person only against being incriminated by his own compelled testimonial communications." *Fisher v. United States,* 425 U.S. at 409, 96 S.Ct. at 1580. Here, Nahas is not required to "restate, repeat, or affirm the truth of the contents of the documents sought." *Id.*

■ Finally, excluding the documents pertaining to wealth which Nahas may have derived from his dealings with "suspect" corporations or individuals, we conclude that the documents concerning the settlement dispute are not covered by the privilege for the same reasons set forth in Point I.(A) above.[5]

## C. Waiver

Alternatively, ACLI asserts that even if Nahas properly could have invoked the Fifth Amendment at an earlier time, by making statements regarding the subject matter of this case in the "Answer" and "Amended Answer and Counterclaims" Nahas has now waived that right. Nahas responds that he has not waived the privilege because the pleadings are neither voluntary, testimonial or incriminating.

Under certain circumstances a waiver of the privilege may be inferred from a witness' statements concerning the subject matter of the case without first determining whether the witness was aware of the existence of the privilege and consciously chose to waive it. *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir.1981). A "testimonial waiver," however, will not be lightly inferred but instead will be found only under compelling circumstances. Moreover, such "compelling circumstances" do not exist unless failure to find a waiver would prejudice a party to the litigation. *Id.* at 288; *see also E.F. Hutton & Company, Inc. v.*

*Jupiter Development Corporation,* 91 F.R.D. 110, 116 (S.D.N.Y.1981).

*Klein v. Harris, supra,* delineated the test for a testimonial waiver as follows:

[A] court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment's privilege against self-incrimination.

. . . .

The requisite reason to know that a waiver might be inferred should be found only if the witness' prior statements were (a) "testimonial," meaning that they were voluntarily made under oath in the context of the same judicial proceeding . . . and (b) "incriminating," meaning that they did not merely deal with matters "collateral" to the events surrounding commission of the crime, . . . but directly inculpated the witness on the charges at issue [citations omitted].

*Klein v. Harris,* 667 F.2d at 287–88.

■ Applying the test to the case at hand we conclude that Nahas has not waived the privilege. The statements relied upon by ACLI to prove that Nahas has waived his privilege, namely, the averments contained in the Answer and the Amended Answer and Counterclaims, are not testimonial. Regardless of whether they were made voluntarily, the statements were not made under oath. Indeed, the pleadings in this case were not verified by Nahas or accompanied by his affidavit but were signed only by counsel. This procedure, although proper under Federal Rule of Civil Procedure 11, does not provide evidence sufficient to find that the witness had reason to know that a waiver of the privilege might be inferred.

---

5. The documents concerning the settlement dispute are requested in paragraphs 17–22 of

ACLI's first request for the production of documents.

Nor, in this case, were the pleadings incriminating. Other than such information as his name and residence, both of which are collateral matters, the only statements in the pleadings which might be potentially incriminating refer to matters relating to the settlement dispute. Having previously concluded that issues relating to that claim are, in most instances, not privileged, waiver is not an issue as to that claim.

## II. DOCUMENTS—OTHER OBJECTIONS

For the reasons set forth in Point I.(B) above, Nahas cannot rely on the Fifth Amendment to refuse to comply with the documents · requests contained in paragraphs 17–21, and paragraph 22 to the extent that it can be answered without connecting Nahas to other individuals or enterprises. In addition to his claim of privilege however, Nahas objects to the production of these documents on various other grounds.

### A. Relevance

Nahas points out that information pertaining to his finances is only relevant if it is limited to his status in 1980, the year the settlement was entered. Since ACLI is willing to concede this point for the moment, the order to compel the documents requested in paragraph 22 is limited to information of Nahas' finances in 1980 unless ACLI can demonstrate that Nahas' financial condition during other time periods is relevant.

### B. Burdensomeness

■ Nahas argues that the requests contained in paragraphs 17–21 are burdensome because "it appears that" ACLI already possesses the documents sought. He correctly asserts that the court may deny a party's discovery request when it seeks information from his adversary that is readily available to the party making the request. See United Cigar-Whelan Stores Corporation v. Philip Morris, Inc., 21 F.R.D. 107, 108–09 (S.D.N.Y.1957). ACLI concedes that it possesses some of the various drafts of the settlement agreement but

maintains that it does not have the remaining documents that have been requested.

The obvious answer to this non-dilemma is for ACLI to provide Nahas a list of the draft agreements in its possession and for Nahas then to comply with the requests in paragraphs 17–21, *excluding* the listed documents. ACLI's providing the list should not be an undue hardship since the various incarnations of the settlement agreement comprise a discrete category of documents which presumably are filed together and which should be easy to locate and identify.

### C. Attorney-Client Privilege

Finally, Nahas asserts that "Requests Nos. 17–21 are impermissible on their face in that they call for documents protected from discovery under the attorney-client and work product privilege." ACLI argues that there are several reasons why Nahas cannot shield the documents on the grounds of work product and/or attorney-client privilege. It is unnecessary to address all of ACLI's assertions on the subject however, because evidence that Nahas' representatives asserted that Nahas was unable to pay more than $8 million, together with Nahas' subsequent admission that he was financially able to pay substantially more than $8 million, is prima facie evidence that Nahas fraudulently induced ACLI to enter into the settlement.

It should first be noted that Nahas has not made the showing necessary to assert the attorney-client privilege in this case since he has done little more than make a blanket claim of privilege without identifying the documents which purportedly are covered, or setting forth facts from which it can be concluded that the privilege does attach. See In re Shopping Carts Antitrust Litigation, 95 F.R.D. 299, 305 (S.D. N.Y.1982). Nonetheless, since the requested documents concern settlement negotiations, which commonly are discussed with one's attorney, it will be assumed, for the purpose of disposing of the motion without further delaying discovery, that Nahas would be able to establish a valid claim of

privilege covering at least some of the documents at issue.

The "[on-going fraud] exception to the privilege applies where a prima facie showing of fraud has been made by the party seeking disclosure." *Quintel Corporation, N.V. v. Citibank, N.A.,* 567 F.Supp. 1357, 1365 (S.D.N.Y.1983) (citing *In re Grand Jury Proceedings,* 680 F.2d 1026, 1028–29 (5th Cir.1982)); *In re Special September 1978 Grand Jury,* 640 F.2d 49, 59 (7th Cir.1980); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1102 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *cf. In re John Doe Corporation,* 675 F.2d 482, 491 (2d Cir. 1982)).

Here, two of ACLI's negotiators have testified to representations made concerning Nahas' financial condition: Henry Maringer, ACLI's President and Chief Operating Officer, testified that Nahas' representatives informed him "that $8 million was the only amount available to settle the claim," (Maringer Tr. 81) and Herbert Stoller, Esq., ACLI's representative, testified that he was informed that "there wasn't enough [money] to go around." (Stoller Tr. 124).

Although Nahas disputes the fact that such statements were made, he does not rely on this factual dispute in arguing that ACLI has failed to establish a prima facie case of fraud. Rather, he argues that ACLI has not met its burden because, assuming, *arguendo,* that Nahas' representatives made such remarks, they "plainly are not the kind of representations upon which sophisticated businessman [sic] can or do reasonably rely in entering into large financial transactions." Nahas' Memorandum in Opposition at 48. This proposition is not persuasive.

■ ACLI contends, and Nahas does not disagree, that Nahas originally informed ACLI that he would assume responsibility for the full $28 million in default charges. ACLI's claim, as we understand it, is that but for the misrepresentation regarding Nahas' ability to pay more than $8 million in settlement, ACLI would have perservered in recovering the full $28 million which ACLI believed it was due. Under these circumstances reliance on later statements that Nahas could no longer pay the full amount is not unreasonable as a matter of law. Further, since Nahas offered to stipulate to the fact that he was able in 1980 to pay substantially more than $8 million, the fact is deemed admitted. This admission, in conjunction with the sworn statements of ACLI's representatives, previously has been held to be sufficient evidence to defeat Nahas' motion for summary judgment. We conclude that the evidence also establishes a prima facie case of on-going fraud sufficient to pierce the attorney-client privilege and the work product "privilege", to which the same standard applies. *See In re John Doe Corporation,* 675 F.2d 482, 492 (2d Cir.1982).

## CONCLUSION

For the foregoing reasons ACLI's motion to compel documents from Nahas is granted as to (1) documents concerning trading in Nahas' own account; and (2) as to the requests set forth in paragraphs 17–22 in ACLI's First Request for Documents. As to Nahas' deposition, the motion to compel is granted as to testimony concerning the settlement and denied with respect to testimony concerning the claim based on the nominee accounts. We have not attempted to address in this decision the application of the privilege to each question posed during the deposition. Under ordinary circumstances Nahas' deposition would be conducted before the court and contemporaneous rulings as to each question to which Nahas objected would be made on the record. Since Nahas is not in the country however, ACLI should be prepared to submit to the court a list of proposed questions which ACLI considers consistent with this Memorandum.

It is so ordered.